United States District Court
Southern District of Texas
**ENTERED**
January 15, 2025
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| Eric Rivera<br>*Plaintiff,*<br><br>v.<br><br>AmGuard Insurance Co.<br>*Defendant.* | §<br>§<br>§<br>§  Civil Action H-23-2075<br>§<br>§<br>§<br>§ |

## MEMORANDUM AND RECOMMENDATION

This case has been referred to the undersigned magistrate judge pursuant to 28 U.S.C. § 636(b)(1). ECF No. 21. Pending before the court is Defendant AmGuard Insurance Company's Motion for Summary Judgment, ECF No. 16; Defendant's Objections to Plaintiff's Summary Judgment Evidence, ECF No. 25; Plaintiff's Motion to Compel Appraisal and Abatement, ECF No. 10; Defendant's Motion to Strike, ECF No. 14; Defendant's Motion in Limine, ECF No. 15; and Plaintiff's Motion for Leave to File Amended Expert Designations, ECF No. 18.

The court recommends that Defendant's summary judgment motion, ECF No. 16, be **GRANTED**. Because the court has considered all the evidence presented by both sides, Defendant's evidentiary objections, ECF No. 25, and Defendant's Motion to Strike Plaintiff's Experts, ECF No. 14, are **DENIED** as **MOOT**. For the same reason, Plaintiff's Motion for Leave to File Amended Expert Designations, ECF No. 18, is **GRANTED** to the extent Plaintiff requests that Degeyter be considered as an expert witness. Plaintiff's Motion to Compel Appraisal and Abatement, ECF No. 10, is **DENIED**. Because the court recommends that summary judgment be granted, there will be no trial, so

Defendant's Motion in Limine, ECF No. 15, is also **DENIED as MOOT**.

### *1. Background*

Plaintiff Eric Rivera sued AmGuard Insurance Company (AmGuard) in state court after AmGuard denied his claim under his homeowner's insurance policy. ECF No. 1-4 at 4. Rivera alleges his home was damaged in a storm on May 18, 2021. *Id.* at 1. Rivera's insurance policy was active from July 1, 2020, to July 1, 2021. ECF No. 16-2 at 1. Rivera reported the loss and submitted a claim for storm damage on September 27, 2022. *Id.* Rivera states that he made his claim more than a year after the storm because he was living out of state at the time, but that he returned home in August 2022 and promptly reported the damage. ECF No. 23 at 1, 6.

An adjuster from Pilot Catastrophe Services, Inc. inspected the property on September 30, 2022. ECF No. 16-3 at 1. The adjuster found hail damage to the roofing and interior water damage, "which occurred on 5/18/21." *Id.* The report contains this statement: "Revision 10/10/2022 - DA request that we remove all exterior damage as there have not been any hail or windstorms during the insured's policy period. All changes were made as requested." *Id.* Based on the requested change, the adjuster calculated the actual cash value of covered loss to be $1,036.28. *Id.*

In an October 13, 2022 Letter, AmGuard's third-party administrator, NARS explained that "Based upon the results of our discussions, investigation, and site inspection, it was determined that the damages to the exterior of your home are unrelated to an event that occurred on 5/18/2021. There is no recorded hail or wind event at the insured location on this reported date of loss." ECF No. 16-4 at 1. Because Rivera's deductible was $4,300, the covered loss fell below the deductible, so no payment was issued. *Id.*

2

Rivera sent additional information to NARS including a National Oceanic and Atmospheric Administration weather report and videos of the storm, but NARS did not change its payment decision. ECF No. 16-5 at 1. On November 16, 2022, NARS stated "The policy will provide coverage for the interior ceiling damage in the master bedroom that appears to be from wind driven rain. Our investigation has determined that the Replacement Cost Value of your loss is less than your $2,500 deductible." *Id.* NARS reiterated its position that the home's exterior damages were unrelated to any weather event on May 18, 2021, and continued to insist that no weather event took place on that day. *Id.* No payment was issued.

Rivera filed suit in Harris County on April 18, 2023. ECF No. 1-4 at 1. Rivera brought seven claims against AmGuard including (1) breach and anticipatory breach of contract, (2) breach of the duty of good faith and fair dealing, (3) deceptive trade practices in violation of the Texas Deceptive Trade Practices Act (DTPA), (4) violations of the Texas Prompt Payment of Claims Act, (5) unfair insurance practices, (6) fraud, and (7) ongoing conspiracy to commit illegal acts. *Id.* at 6–16. AmGuard removed the suit to federal court on June 7, 2023, ECF No. 1 at 3, invoking diversity jurisdiction, and now seeks summary judgment on all Rivera's claims. ECF No. 1 at 2; ECF No. 16.

In support of summary judgment, AmGuard submitted Matthew Oestrike's expert report. ECF No. 16-7. Oestrike is a licensed professional engineer with twenty-five years of experience. *Id.* at 1. He inspected the subject property on March 28, 2024. *Id.* Oestrike opines that the home did not suffer any exterior damage due to wind. *Id.* at 2. He did find several as-built deficiencies, such as under-driven fasteners and uneven joints in the siding. *Id.* He observed no creased or unadhered shingles or other roof damage consistent with wind damage. *Id.* The damage

3

he did find on the roof was not consistent with wind damage. *Id.* at 3. He did find that some of the roof damage was consistent with mechanical impact. *Id.* As for hail damage, Oestrike found two discrete fractures to two windows on the side of the house consistent with hail damage on the alleged date of loss. *Id.* He found no damages to window screens or metal downspouts consistent with hail. *Id.* Oestrike found some hail damage to the roof. *Id.* at 3–4. For the most part, however, he could not tell if the damage was due to the hail event alleged to have occurred on May 18, 2021, or other hail events that were known to have occurred before that. *Id.* He also opined that some of the damage to the roof was consistent with normal exposure to the elements, rainwater runoff, and/or foot traffic. *Id.* at 4.

Oestrike concluded his report with several findings. He again stated that wind did not damage the property. ECF No. 16-7 at 4. Parts of the roof required replacement, but the cause of the damage was due to the May 18, 2021 hail event "and most likely during one other hail event." *Id.* at 5. Damage to the two windows was due to the hail event on May 18, 2021. *Id.* The damage to the ceiling of the master bedroom was due to rainwater intrusion during the May 18, 2021 storm "as well as during other rain events, unrelated to a wind- or hail-created opening." *Id.*

Plaintiff attached several pieces of evidence to his Response. He attached a report by Quantum Claim Consulting Services, which estimates the total damage to the home to be $104,104.16. ECF No. 23-1 at 14. The report does not include any opinions about the cause of the damages to the home, or when the damages occurred. Attached to the report are dozens of photos showing damage to the home, but there is no explanation for what may have caused any part of the damages. *Id.* at 15–109. Also attached is Gregory Allen Degeyter's report. ECF No. 23-2. Degeyter is a meteorologist, and he opines that a wind and hail storm took place

4

on May 19, 2021, which he understands to be the storm that Plaintiff believes occurred on May 18, 2021.[1] *Id.* at 2. He opines that hail and 60–65 mile per hour winds impacted the home during the event. *Id.* at 9. The report does not establish that Degeyter is qualified to opine about structural engineering or causation. Plaintiff also attaches his own declaration, which states in a conclusory fashion that the May 18, 2021 storm damaged his home. ECF No. 23-3 at 1, ¶ 3. Rivera does not explain how he knows that the May 18, 2021 storm in particular caused the damage. Nor does he present facts to exclude the possibility that another storm may also have been a sole or concurrent cause of the damages.

## 2. *Legal Standards*

"Summary judgment is appropriate only if, viewing the evidence in the light most favorable to the nonmovant, 'the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Davenport v. Edward D. Jones & Co.*, 891 F.3d 162, 167 (5th Cir. 2018) (quoting Fed. R. Civ. P. 56(a)). No genuine issue of material fact exists if a rational jury could not find for the nonmoving party based on the complete record. *McMichael v. Transocean Offshore Deepwater Drilling, Inc.*, 934 F.3d 447, 455 (5th Cir. 2019) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

Initially, "[t]he movant bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact." *Lincoln Gen. Ins. Co. v. Reyna*, 401 F.3d 347, 349 (5th Cir. 2005) (citing *Celotex Corp. v. Catrett*, 477

---

[1] While Degeyter found that the storm took place on May 19, 2021, not May 18, 2021, it appears that the parties are referring to the same storm. The court will refer to the May 18, 2021 date herein to avoid any confusion.

U.S. 317, 322–25 (1986)). If this burden is met, the nonmovant must then "go beyond the pleadings," using competent summary judgment evidence to cite "specific facts" showing a genuine issue for trial. *McCarty v. Hillstone Rest. Grp., Inc.*, 864 F.3d 354, 357 (5th Cir. 2017) (quoting *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005)).

The court reviews all evidence and reasonable inferences in the light most favorable to the nonmoving party. *See Tolan v. Cotton*, 572 U.S. 650, 657 (2014) (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970)). The court, however, does not have a duty "to search the record for material fact issues." *RSR Corp. v. Int'l Ins. Co.*, 612 F.3d 851, 857 (5th Cir. 2010) ("Rather, the party opposing the summary judgment is required to identify specific evidence in the record and to articulate precisely how this evidence supports [the] claim."). Although the court needs to consider only the cited evidence, it may consider other materials in the summary judgment record. Fed. R. Civ. P. 56(c)(3).

"[C]onclusory allegations, unsubstantiated assertions, or 'only a scintilla of evidence'" are not enough to defeat a properly supported motion for summary judgment. *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)). "[T]here must be evidence on which the jury could reasonably find for the [nonmovant]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

### 3. *Evidentiary Issues*

AmGuard objects to and moves to exclude all the evidence Rivera included in his response to AmGuard's summary judgment motion. ECF No. 25 at 2–5. While the court takes seriously litigants' obligations to attach only admissible evidence, to adhere closely to expert witness disclosure timelines and rules, and to timely and fairly provide discovery to their opponent, the court

6

need not weigh in on those issues here. Even considering all the evidence Rivera has submitted, summary judgment should still be granted in favor of AmGuard. Accordingly, AmGuard's objections and motion to strike, ECF Nos. 14, 25, are **DENIED** as **MOOT**.

Rivera apparently made a mistake when designating his experts and left Oestrike out of his latest designation. He now seeks to amend his designation to re-name Oestrike as an expert. Again, because Oestrike's expert testimony does not stand in the way of summary judgment, allowing the amendment is harmless. Plaintiff's motion for leave to amend expert designations, ECF No. 18, is **GRANTED**.

AmGuard argues that Rivera failed to timely respond to AmGuard's request for written discovery, and thus, the matters therein are deemed admitted. ECF No. 16 at 3. The court need not decide whether AmGuard is entitled to the relief it seeks. The court has a strong preference for deciding cases on the merits, and even without any deemed admissions AmGuard is still entitled to summary judgment. AmGuard's request for deemed admissions is **DENIED**.

Also before the court is AmGuard's motion in limine. ECF No. 15. Because the court recommends that summary judgment be granted on all of Rivera's claims, the court does not expect that a trial will take place. The motion in limine is therefore **DENIED as MOOT**.

### 4. *Summary Judgment Analysis*
#### a. *Breach of Contract*

The court first addresses AmGuard's arguments that there were no relevant weather events during the policy period, and that there is no evidence of weather-related damage to Rivera's home. ECF No. 16 at 6. AmGuard states that "[a]n engineer inspected the property and reviewed historic weather data. Ex. 7. He determined that the Property did not exhibit any signs of wind or hail damage

and that there are as-built conditions as well as normal wear and tear." *Id.* at 2.

AmGuard's argument is puzzling. AmGuard's Exhibit 7 is Oestrike's declaration. As discussed, Oestrike agrees that there was a weather event on May 18, 2021, and that it likely caused some damage to the home. ECF No. 16-7 at 4–5. AmGuard's counsel conceded at the hearing on the instant motion that if his expert said there was a weather event on the relevant date, he would not dispute it. Accordingly, because everyone now agrees that there was a wind and hail event on May 18, 2021, the court will take that fact as true. Moreover, the court concludes that it is undisputed that the May 18, 2021 storm caused some damage to the home. The real question in this case is whether Rivera can carry his burden to segregate the damages caused by the May 18, 2021 storm, which are covered under the policy, from damages caused by weather events outside the policy period, which are not covered. The court concludes that there is evidence of covered damage, but that Rivera cannot segregate the vast majority of covered damage from damage that is not covered. Moreover, Rivera cannot demonstrate that the covered damage that can arguably be isolated to being caused by the May 18, 2021 storm has a repair cost greater than the deductible.

The court now turns to Rivera's claims for breach of contract and anticipatory breach of contract. Rivera alleges that AmGuard breached the insurance contract when it failed to pay his claim under the terms of the policy. ECF No. 1-4 at 6. Rivera further alleges that he expects AmGuard will continue to breach the insurance contract by continuing to refuse payment on his claim. *Id.* "In Texas, insurance policies are contracts subject to the rules of contract construction." *Certain Underwriters at Lloyd's of London v. Lowen Valley View, LLC*, 892 F.3d 167, 170 (5th Cir. 2018). To establish his breach of contract claim, Rivera must show

8

that he filed an insurance claim for losses that are covered by his policy, that AmGuard denied his legitimate claim, and that the denial caused Rivera harm. *Id.*

The policy in this case covers direct physical loss to Rivera's home. ECF No. 16-1 at 28. The policy does not cover losses due to normal wear and tear or deterioration. *Id.* at 29 (Section I – Perils Insured Against, ¶ 2(c)(6)). The policy obligates AmGuard to "pay only that part of the total of all loss payable that exceeds the deductible amount shown in the Declarations." *Id.* at 32 (Section I – Conditions, ¶ (B)(1)). The applicable deductible was $4,300 for wind and hail damage, and $2,500 for all other perils. *Id.* at 13. The policy also applies "only to loss which occurs during the policy period." *Id.* at 35 (Section I – Conditions, ¶ Q). AmGuard argues, among other things, that Rivera cannot demonstrate a covered loss greater than the deductible of $2,500. More specifically, AmGuard argues that Rivera cannot segregate covered losses from non-covered losses and thus cannot show that his covered losses exceed the deductible.

Insurers are liable only for losses covered by the policy, so when an insured is injured by both covered and excluded perils, it is the insured's burden to "present some evidence affording the jury a reasonable basis on which to allocate the damage." *Certain Underwriters at Lloyd's of London*, 892 F.3d at 170 (quoting *Lyons v. Millers Cas. Ins. Co. of Tex.*, 866 S.W.2d 597, 601 (Tex. 1993)). "If the insured falls short of meeting this burden, the insurer is entitled to summary judgment." *Id.* (citing *Hamilton Props. v. Am. Ins. Co.*, 643 F. App'x 437, 442 (5th Cir. 2016)).

The main evidence of causation in this case is actually AmGuard's own expert, Matthew Oestrike. As discussed, he opines that two windows were damaged by hail occurring on May 18, 2021. ECF No. 16-7 at 5. Oestrike attributes all the other hail damage to more than one storm, including the storm that took

9

place on May 18, 2021. *Id.* at 4–5. The only other storms that have been identified as taking place before Rivera reported his loss were in 2015, 2017, and 2020, all before the effective date of Rivera's policy. *Id.* at 3. Oestrike also identifies some of the damages to the home as being attributable to normal wear and tear, deterioration and as-built conditions. *Id.* at 2, 4.

Rivera does not respond with any evidence to demonstrate that it was, in fact, the May 18, 2021 storm that damaged his property, or to demonstrate how much of the total amount of damage to his home is attributable to that storm. Rivera's technical expert, Brandon Gadrow, gives an estimate of damages but says nothing about the cause of those damages. ECF No. 23-1. Assuming without deciding that the meteorologist, Degeyter, could opine about causation, his admissible opinion is merely that a storm capable of causing the damages took place. ECF No. 23-2. But that is not in dispute. Degeyter does not opine about other storms. In fact, his analysis appears to have been limited to evaluating the weather only during the policy period. *Id.* at 18 (stating that "I have been advised that the relevant time period under analysis is the policy period"). Degeyter even seems to acknowledge that he cannot know if the damage to the home was preexisting. *Id.* at 9 (stating that the shingle damage was "caused or if preexisting was exacerbated by" the storm). He does not opine about wear and tear or as-built conditions. Even Rivera's own declaration does not attempt to opine about causation or to exclude the earlier storms as sources of causation. While Rivera's counsel argues that Rivera could testify about the pre-storm condition of the home, there is no evidence of that in the summary judgment record.[2]

---

[2] Rivera was not deposed, so the court has only his declaration to go by.

10

The court concludes that, except for the two categories of damages discussed next, there is no evidence from which a reasonable jury could place a dollar figure on the covered losses in this case. Accordingly, the jury could not conclude that the covered damages were above the deductible or that AmGuard failed to pay any amount owed under the policy.

AmGuard did agree that the damage to the ceiling of the master bedroom was caused by the May 18, 2021 storm, but that the damage fell below the policy's deductible. ECF No. 16-5. Rivera has not presented any evidence of the cost to repair that damage. The closest he comes is Gadrow's report which calculates the total damages for the master bedroom to be $3,796.64. ECF No. 23-1 at 4. The problem is that the quoted figure includes damages to the walls, and baseboards, *id.*, which have not been shown by evidence to have been damaged during the policy period. Rivera makes no attempt to segregate the cost to repair the ceiling from the cost to repair the rest of the master bedroom. The court notes, however, that Gadrow's report states the square footage of the ceiling in the master bedroom to be 257.13, the total square footage of the ceiling and walls to be 898.79, and the total cost to repair the master bedroom to be $3,796.64. Accordingly, the proportion of the cost to repair the ceiling could be estimated to be $1,086.16.[3] That is nowhere near the deductible, and is, interestingly, very close to the $1,036.28 that AmGuard found to be the actual cash value to repair the ceiling in the master bedroom. ECF No. 16-5 at 1. Thus, even assuming that the master bedroom ceiling damage was caused by the May 18, 2021 storm, there is no evidence that the

---

[3] The court reaches that figure by dividing the square footage of the ceiling by the total square footage of the ceiling plus the walls and multiplying that figure by the total cost. That is 257.13/898.79 x 3,796.64 = 1,086.16.

damages exceeded the deductible, so there is no evidence that AmGuard breached the contract by refusing to make a payment.

Oestrike also identifies the damage to two windows as having been caused by the May 18, 2021 storm. ECF No. 16-7 at 5. As the court reads Gadrow's report, the cost to remove and replace the vinyl glazing around those windows is less than $100. ECF No. 23-1 at 4. So, again, failure to pay that amount is not a breach of contract because it does not exceed the deductible.

For these reasons, the court recommends that AmGuard's motion for summary judgment on Rivera's claims for breach of contract and anticipatory breach of contract be granted and that those claims be dismissed with prejudice. *Cf. Certain Underwriters at Lloyd's of London,* 892 F.3d at 170–72 (affirming summary judgment against insured under similar facts and circumstances; finding that the insured's failure to segregate damages attributable to hailstorms outside the policy period did not afford the jury a reasonable basis on which to allocate the damage).

### b. Rivera's Statutory and Common Law Claims

AmGuard has moved for summary judgment on all of Rivera's remaining claims. ECF No. 16 at 7–11. Rivera did not respond to AmGuard's arguments about his extra-contractual claims, his mental anguish claim, his prompt payment claim, or his other common law claims. Accordingly, Rivera has failed to point to evidence showing a dispute of material fact on those claims. In any event, the court has reviewed all the evidence in the record and concludes that there is no dispute of material fact and that AmGuard is entitled to judgment on all of Rivera's remaining claims for relief.

Rivera has presented no evidence of mental anguish, other than in his own declaration. He claims, for example, that the denial of his insurance claim caused him to feel "abandoned and distressed." ECF No. 23-3 at 2. He does not claim that AmGuard

did anything to him other than deny his claim. The court has already found that AmGuard properly denied Rivera's insurance claim. Rivera does not explain how AmGuard's lawful and proper actions caused him compensable mental anguish damages. Summary judgment should be granted.

Rivera raises several other statutory, extra-contractual claims in his state court petition, as well as claims for fraud, conspiracy, and breach of the duty of good faith and fair dealing. ECF No. 1-4 at 6–16. Again, Amguard has moved for summary judgment on all of Rivera's claims, but Rivera did not address AmGuard's arguments. The court sees no evidence in the record to support any tort claim, including conspiracy or fraud.

As for Rivera's statutory claims, "[a]n insured cannot recover *any* damages based on an insurer's statutory violation if the insured had no right to receive benefits under the policy and sustained no injury independent of a right to benefits." *USAA Tex. Lloyds Co. v. Menchaca*, 545 S.W.3d 479, 489 (Tex. 2018). Rivera has provided no evidence that he sustained an injury independent of a right to benefits, and he has not shown any entitlement to policy benefits. Thus, Rivera cannot recover damages based on any alleged statutory violation. AmGuard's motion for summary judgment should be granted.

Rivera has asserted a claim under the Texas Prompt Payment of Claims Act (TPPCA). ECF No. 10-4 at 10–11. "The TPPCA establishes a number of deadlines for insurance companies to process claims and penalizes a failure to meet its deadlines by assessing interest on the claim at the rate of eighteen percent per annum and the payment of the insured's attorney's fees." *Crayton v. Homeowners of Am. Ins. Co.*, No. 02-20-00037-CV, 2020 WL 7639582, at *4 (Tex. App.—Fort Worth Dec. 23, 2020, no pet.) (citing Tex. Ins. Code §§ 542.051–542.061). A TPPCA claim requires proof: "(1) [of] a claim under an insurance policy; (2) that

the insurer is liable for the claim; and (3) that the insurer has failed to follow one or more sections of [the TPPCA] with respect to the claim." *Barbara Techs. Corp. v. State Farm Lloyds,* 589 S.W.3d 806, 824 (Tex. 2019) (quoting *Allstate Ins. Co. v. Bonner,* 51 S.W.3d 289, 291 (Tex. 2001), judgment withdrawn and superseded on reh'g by No. 00-0282, 2001 WL 1412951 (Tex. June 21, 2001)).

Rivera has presented no evidence to demonstrate that AmGuard violated the statute's deadlines. Nor has he shown that AmGuard owes him any payment. AmGuard cannot be liable for failing to promptly pay a claim when it does not owe policy benefits to Rivera. AmGuard is entitled to summary judgment.

### 5. *Appraisal*

Rivera has moved to compel appraisal. ECF No. 10. The policy allows either party to invoke the appraisal process when there is a disagreement about the amount of loss. ECF No. 16-1 at 34. AmGuard argues that the dispute is about coverage, not the amount of loss, and that Rivera waived his right to invoke appraisal. ECF No. 13 at 1. The court agrees with the second argument and therefore does not reach the first.

A party to an insurance contract with an appraisal clause may compel the other party to submit to the appraisal process. *In re Allstate Cnty. Mut. Ins. Co.,* 85 S.W.3d 193, 195–96 (Tex. 2002). Appraisal clauses are common provisions in insurance contracts and are designed resolve disputes about the amount of a covered loss. *In re Universal Underwriters of Tex. Ins. Co.,* 345 S.W.3d 404, 405 (Tex. 2011). In Texas, appraisals are limited to determining the amount of loss and not which party is liable for the loss. *State Farm Lloyds v. Johnson,* 290 S.W.3d 886, 889–90 (Tex. 2009). Appraisal clauses are generally enforced and are favored because they help the insured and insurer resolve disputes without resorting to litigation. *Meadows v. Allied Prop. & Cas. Ins. Co.,* No. 1:19-CV-2-H, 2020 WL 6122543, at *1 (N.D. Tex. Jan. 7, 2020). A

trial court does not have the discretion to ignore a valid appraisal clause. *Johnson*, 290 S.W.3d at 888. However, a party may waive its right to invoke appraisal. *Coleman v. AmGuard Ins. Co.*, 709 F. Supp. 3d 279, 282 (S.D. Tex. 2023). To demonstrate that a party waived its right to seek appraisal requires a showing of intentional conduct demonstrating relinquishment of the right and prejudice to the opposing party. *Id.* at 282–84. Whether the circumstances rise to the level of waiver is a question of law. *Id.* at 281.

The court first addresses whether Rivera intentionally waived his right to seek appraisal. This element requires AmGuard to show that Rivera acted in such a way as to reasonably induce AmGuard to believe Rivera did not desire to proceed with appraisal. *In re Universal Underwriters*, 345 S.W.3d at 407. Rivera states repeatedly that he timely invoked appraisal. *See, e.g.*, ECF No. 10 at 1, 3, 5. Rivera does not specify when he first sought appraisal. Rivera does not attach any evidence showing that he invoked appraisal before filing the instant motion. Rivera's state court petition states that he "reserved" the right to invoke appraisal, ECF No. 1-4 at 19, so the court can only conclude that appraisal had not been requested when the state court case was filed on April 18, 2023. By then, nearly five months had elapsed since AmGuard sent its November 16, 2022 letter refusing to pay the claim. *See* ECF No. 16-5. AmGuard states in its motion that Rivera waited more than a year after filing suit to invoke appraisal, ECF No. 13 at 5, which corresponds to the date the instant motion seeking to compel appraisal, ECF No. 10, was filed. The court has no evidence that Rivera sought appraisal before filing the instant motion.

By the time Rivera filed his motion to compel appraisal on May 22, 2024, eighteen months had elapsed since AmGuard finally denied Rivera's claim and more than a year had elapsed since this lawsuit was filed. In the meantime, under the court's August 16,

2023 Docket Control Order, ECF No. 7, discovery had been ongoing for at least nine months and deadlines for expert reports had already passed. The court concludes that Rivera acted intentionally to induce AmGuard to believe that appraisal was not desired in this case. Rivera was aware of the possibility of appraisal when he filed this case, given that he reserved his right to it in his state court petition. He waited until close to the close of discovery and after expert reports were due before seeking to invoke appraisal. The court finds intentional waiver. *Cf. Coleman*, 709 F. Supp. 3d at 283 (finding waiver when plaintiff invoked appraisal after many litigation deadlines had passed, and twenty-two months from the insurance company's final payment on the claim).

The court turns to prejudice. Again, Rivera waited until the parties had hired experts and prepared reports before invoking appraisal. Discovery had been under way for many months. Any potential for saving time and resources, which is what appraisal is for, had by then gone by the wayside. Rivera waived his right to seek appraisal and his motion to compel appraisal is **DENIED**.

### 6. *Conclusion*

The summary judgment record does not raise a genuine issue of material fact as to any of Rivera's claims and AmGuard has shown that it is entitled to judgment as a matter of law. The court therefore recommends that Defendant's summary judgment motion, ECF No. 16, be **GRANTED**. Defendant's Motion to Strike Plaintiff's Experts, ECF No. 14, is **DENIED** as **MOOT**. Plaintiff's Motion for Leave to File Amended Expert Designations, ECF No. 18, is **GRANTED** to the extent Plaintiff requests that Degeyter be considered as an expert witness. Plaintiff's Motion to Compel Appraisal and Abatement, ECF No. 10, is **DENIED**. Defendant's Motion in Limine, ECF No. 15, is **DENIED as MOOT**.

The parties have fourteen days from service of this Memorandum and Recommendation to file written objections. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72. Failure to timely file objections will preclude appellate review of factual findings or legal conclusions, except for plain error. *See Thomas v. Arn*, 474 U.S. 140, 147–49 (1985); *Rodriguez v. Bowen*, 857 F.2d 275, 276–77 (5th Cir. 1988).

Signed at Houston, Texas on January 15, 2025.

_____
Peter Bray
United States Magistrate Judge